**UNITED STATES of America, Appellee,**

v.

**Ronald Lester JOHNSON, Appellant.**

No. 91–3719.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1992.
Decided July 10, 1992.

Alfredo Parrish, Des Moines, Iowa, argued (Andrew J. Dunn, on the brief), for appellant.

Linda R. Reade, Des Moines, Iowa, argued (Gene W. Shepard and Ronald M. Kayser, on the brief), for appellee.

Before J. GIBSON, Circuit Judge, PECK,* Senior Circuit Judge, and BEAM, Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Ronald Johnson appeals from a guilty verdict in the district court[1] on one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and two counts of distribution of methamphetamine in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. § 2. Johnson challenges his conviction and sentence on the grounds of insufficiency of the evidence, prosecutorial misconduct, and the district court's application of the Sentencing Guidelines. For the reasons stated below, we reverse and remand for a new trial.

## I. FACTS

Police informant Jerry Harland purchased methamphetamine from Eric Baxter on several occasions. On September 24, 1991, during a meeting to arrange a purchase, Baxter informed Harland that his source for methamphetamine was appellant Ronald Johnson. Harland returned the next day to purchase the methamphetamine and Baxter told him that it had been supplied by Johnson. Baxter also told Harland to return later in the day because Johnson was going to arrange for Harland to purchase half a gram of methamphetamine. On October 3, 1990, Harland, accompanied by Special Agent Jerry Nelson, again met with Baxter to purchase methamphetamine. Harland, Nelson, and Baxter proceeded to Johnson's home. Baxter took the purchase money into Johnson's house and returned with half a gram of methamphetamine. Baxter told Harland that Johnson had given him a quarter gram of methamphetamine for arranging the purchase. On October 11, 1990, Harland and Agent Nelson returned to Baxter's residence for another drug purchase. The three men again went to Johnson's house and purchased four ounces of methamphetamine.

Johnson was indicted on one count of conspiracy to distribute methamphetamine and two counts of distribution of methamphetamine for the October purchases. Johnson pled not guilty and proceeded to trial. He was found guilty on all three counts and sentenced to 72 months imprisonment. He now appeals both his conviction and his sentence.

## II. PROSECUTORIAL MISCONDUCT

We address Johnson's claim of prosecutorial misconduct first because our disposition of this issue makes it unnecessary to review Johnson's other challenges. During rebuttal closing argument, the prosecutor stated:

> [The defense attorney] says your decision to uphold the law is very important to his client. Your decision to uphold the law is very important to society. You're the people that stand as a bulwark against the continuation of what Mr. Johnson is doing on the street, putting this poison on the street.

Johnson objected on the grounds that the comment was likely to arouse the jury's passion and prejudice. The district court overruled the objection. Johnson moved for a mistrial. In denying the motion, the judge stated that he did not find "the comments were either designed to nor intended to, nor did they cause the jury to let any emotions or passion enter into their deliberations...." Johnson also made motions for judgment of acquittal and a new trial which were denied. On appeal, Johnson alleges that the prosecutor's remarks were so prejudicial that he was deprived of a fair trial.

It is well established that prosecutorial misconduct in closing arguments may result in the reversal of a conviction. *United States v. Norton*, 639 F.2d 427 (8th Cir.1981). However, the trial court has broad discretion in controlling closing arguments and this court will not reverse absent a showing of abuse of discretion.

---

* The HONORABLE JOHN W. PECK, Senior United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

*United States v. Segal,* 649 F.2d 599, 604 (8th Cir.1981). The facts of each case must be examined independently to determine if the prosecutor's remarks were unduly prejudicial to the defendant. *United States v. Splain,* 545 F.2d 1131, 1135 (8th Cir.1976). The conviction will be reversed if this court ascertains that the jury verdict could reasonably have been affected by the prosecutor's improper comments. *Id.* This court has set forth a two-part test for reversible prosecutorial misconduct:

> (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.

*United States v. Hernandez,* 779 F.2d 456, 458 (8th Cir.1985).

■ In this case, the prosecutor exhorted the jurors to "stand as a bulwark against the continuation of what Mr. Johnson is doing on the street, putting this poison on the streets." This court has held that "[u]nless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible...." *United States v. Lewis,* 547 F.2d 1030, 1037 (8th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977). However, after reviewing precedent from the United States Supreme Court and the circuit courts, we conclude that the prosecutor's remarks in this case were unduly inflammatory and improper.

More than fifty years ago, the United States Supreme Court established that prosecutors' conduct will be held to high standards. In *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the Government prosecutor's misconduct included misstating facts during cross-examination, bullying witnesses, and making improper insinuations and assertions calculated to mislead the jury during closing argument. The Court stated that a prosecutor is not representing an ordinary party, but a sovereignty whose interest in a criminal prosecution is to see that justice is done. *Id.* at 88, 55 S.Ct. at 633. The Court noted that jurors are likely to expect the prosecutor to faithfully fulfill his obligations. *Id.* Thus, "improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Id.*

Several years later in *Viereck v. United States,* 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943), the Court again addressed prosecutorial misconduct in relation to closing arguments. *Viereck* involved the conviction of an individual who failed to disclose certain material facts on a State Department registration form for agents representing foreign principals during World War II. In his closing argument, the prosecutor emphasized the fact that America was involved in a "harsh, cruel, murderous war." *Id.* at 247 n. 3, 63 S.Ct. at 566. He then stated:

> The American people are relying upon you ladies and gentlemen for their protection against this sort of crime, just as much as they are relying upon the protection of the Men who man the guns in Bataan Peninsula, and everywhere else.

*Id.* While the Court reversed on other grounds, it specifically stated that the remarks were irrelevant to the facts or issues of the case and had the purpose and effect of arousing passion and prejudice. *Id.* at 247, 63 S.Ct. at 566. The Court concluded that the remarks prejudiced the petitioner's right to a fair trial. *Id.*

This court has also recognized the problem of improper statements in closing arguments and admonished prosecutors to stay within the proper bounds of their adversarial roles. *United States v. Lee,* 743 F.2d 1240, 1253 (8th Cir.1984) (citing *Llach v. United States,* 739 F.2d 1322, 1336 (8th Cir.1984)). In *Lee,* the prosecutor made improper statements and injected his personal opinion. For instance, the prosecutor stated:

> All the drug smugglers around should be told by your actions that bringing in marijuana is wrong.
>
> \* \* \* \* \* \*
>
> What you do as jurors is going to be watched here. You can better believe

that each and every drug smuggler is watching what happens here today. *Lee,* 743 F.2d at 1252–53. This court ruled that the argument constituted "an emotional appeal calculated to persuade the jury to decide the case on other than the facts before it." *Id.* at 1253. Furthermore, the court ruled that the argument as a whole was reversible error with regard to one of the defendants.

Similar arguments resulted in a reversal in *United States v. Solivan,* 937 F.2d 1146 (6th Cir.1991). In *Solivan,* the prosecutor urged the jury "to tell [the defendant] and all of the other drug dealers like her that we don't want that stuff in Northern Kentucky...." *Id.* at 1148. The court found these remarks to be analogous to the ones in *Viereck* because in each case the prosecutor improperly appealed to national or community interests of the jurors. *Id.* at 1152. Just as the country was embroiled in World War II when *Viereck* was tried, it is now "in the midst of an ongoing crisis, popularly termed the 'War on Drugs.'" *Id.* at 1153. The prosecutor's comments suggested that if the defendant was not convicted, the drug problem in the jurors' community would continue unabated. The court concluded that "[i]t is error for a prosecutor to direct the jurors' desires to end a social problem toward convicting a particular defendant." *Id.* at 1153.

The District of Columbia Circuit in *United States v. Monaghan,* 741 F.2d 1434 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985), eloquently expressed the same principle by stating:

A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

*Id.* at 1441. In another case, the court stated that prosecutors are not "at liberty to substitute emotion for evidence by equating, directly or by innuendo, a verdict of guilty to a blow against the drug problem." *United States v. Hawkins,* 595 F.2d 751, 754 (D.C.Cir.1978), *cert. denied,* 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979).

■ Clearly, the drug problem is a matter of great concern in this country today. This court is sympathetic to prosecutors' vigorous efforts to prosecute participants in the drug trade. However, we are in agreement with the precedent cited above that the pressing nature of the problem does not give prosecutors license to encumber certain defendants with responsibility for the larger societal problem in addition to their own misdeeds. We conclude that by urging the jury to act as a "bulwark against ... putting this poison on the streets," the prosecutor in this case appealed to the jurors to be the conscience of the community in an improper and inflammatory manner.

■ Having determined that the comment was improper, this court must decide whether the conduct, viewed in the context of the entire trial, was so offensive that it deprived the defendant of a fair trial. *Hernandez,* 779 F.2d at 460. In determining the prejudicial effect of prosecutorial misconduct, this court considers three factors:

(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the trial court.

*Id.*

■ Prejudice sufficient to warrant reversal may result from the cumulative effect of repeated improper comments by the prosecutor. *Berger, supra; Hernandez,* 779 F.2d at 460. The conduct in question here involved only one remark by the prosecutor. However, " 'a single misstep' on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated." *Solivan,* 937 F.2d at 1150.

With regard to the strength of the evidence, this court has stated:

One important factor to consider in determining whether a closing argument is so prejudicial to require reversal of the conviction is the amount of evidence indicating defendant's guilt. If the evidence of guilt is overwhelming, an improper argument is less likely to affect the jury verdict. On the contrary, if the evidence of guilt is weak or tenuous, the existence of prejudice is more easily assumed.

*Splain*, 545 F.2d at 1135 (citations omitted).

■ In the present case, the evidence of Johnson's guilt is far from overwhelming. The trial judge conceded that the evidence of conspiracy was "rather thin." Furthermore, there is no direct evidence that Johnson was involved in the October 3rd drug transaction. Although Eric Baxter delivered drugs to the informant outside Johnson's house on that occasion, Johnson was not actually seen. Certainly, a jury could reasonably infer that Baxter received the drugs from Johnson inside the house. In the absence of improper remarks by the prosecutor, we would find the evidence sufficient to sustain Johnson's conviction. However, under the circumstances, we must consider the impact of the prosecutor's improper comments on the jury. Given the fear and concern engendered by the national drug epidemic, we conclude it is likely that the prosecutor's comment urging the jury to strike a blow against the problem and the emotion it stirred "influenced the jury by diverting its attention away from its task to weigh the evidence and submit a reasoned decision...." *Solivan*, 937 F.2d at 1153. Where the prosecutor's remarks are improper and the evidence is marginal, the conviction will be reversed. *See, Splain*, 545 F.2d at 1135–36.

Finally, there was no curative instruction given. In light of the foregoing discussion, we cannot conclude that the standard instructions were sufficient to cure the error. We agree with the rationale expressed in *Newlon v. Armontrout*, 885 F.2d 1328, 1337 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990):

The State's argument that the standard jury instruction that statements made by counsel during opening and closing argument are not evidence cures any error made by the prosecutor is without merit. Such a broadly sweeping rule would permit *any* closing argument, no matter how egregious.

## III. CONCLUSION

Thus, we conclude that the prosecutor's comments constitute an error prejudicial to Johnson's right to a fair trial. While not all constitutional errors require reversal, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). In light of the tenuous nature of the evidence and the lack of a curative instruction, combined with the fear and concern attendant upon the national drug problem, we cannot declare that the error was harmless beyond a reasonable doubt. Thus, we conclude that the district court abused its discretion in denying Johnson's motion for a mistrial. Accordingly, Johnson's conviction and sentence are reversed and remanded for a new trial.