**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Patrick Scott MALONE, Defendant–
Appellant.**

No. 94–2680.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1994.

Decided Feb. 28, 1995.

Rehearing Denied April 6, 1995.

Alfredo Parrish, Des Moines, IA, argued, for appellant.

Edwin F. Kelly, Jr., Des Moines, IA, argued (Don C. Nickerson and Ed Kelly, on the brief), for appellee.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Patrick Scott Malone appeals from his convictions of one count of conspiring to pass counterfeit money in violation of 18 U.S.C. § 371 (1988), and three counts of passing counterfeit money in violation of 18 U.S.C. §§ 472 and 2 (1988). He argues his convictions should be reversed because the prosecutor failed to produce Rule 16 material during trial, improperly commented on his failure to testify, and misstated the law to the jury. He also argues that there is insufficient evidence that he passed counterfeit money, that the district court[1] erred in failing to suppress evidence from the search of his car, and that the district court erred in sentencing him. We affirm his convictions and sentence.

On January 31, 1994, two police officers observed a 1994 Lincoln Town Car, driven by Malone, stop at a reported "crack house" in Des Moines, Iowa. Initially, the officers did not stop the car but parked nearby so they could watch the car. Several minutes later, the car approached the intersection and made an illegal turn. As the officers pulled the car over, they saw the passenger moving quickly as if he was putting something under the floor mat. The officers stopped the car, and asked Malone to get out of the car. The officers frisked Malone and found a knife in his right front pocket. The officers told Malone to sit in the patrol car, and then asked the passenger, Darren Luckett, to get out of the car. After Luckett got out of the car, one of the officers saw a loaded clip for a handgun in the middle of the car's front seat. The officers then searched the car, finding a semi-automatic firearm in the glove compartment and several hundred dollars cash under the front carpet on the passenger's side.

The officers arrested Malone and Luckett and took them to the Des Moines police station. An inventory of the contents of Luckett's pockets revealed two counterfeit $100 bills. Malone had $1,246 cash, including a $100 bill which bore the same serial number as the counterfeit money retrieved from Luckett. The officers later found two counterfeit $100 bills bearing the same serial number under the patrol car's back seat cushion.

Luckett[2] testified at trial that during the "Super Bowl" football weekend Malone drove him to various bars in the Des Moines area. Malone waited in the car while Luckett went into the bar and bought a drink with a $100 counterfeit bill. Luckett drank the drink then returned to the car where the two split the proceeds. Luckett testified that he passed approximately twenty $100 bills in this manner, but that he could not remember the names of all the bars due to the amount of alcohol he consumed. The Secret Service recovered twelve counterfeit $100 bills which had been passed at different bars in the Des Moines area. These counterfeit bills also had the same serial number as the genuine bill recovered from Malone. Luckett also testified about computer equipment he helped Malone steal.

At trial, the court amended Count I of the indictment charging a conspiracy to manufacture counterfeit bills because there was no evidence of an agreement to manufacture. The court submitted the case to the jury on one count of conspiracy to pass counterfeit,

---

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

2. The government indicted Luckett along with Malone. Luckett pled guilty to the charges and received a four-month sentence.

and three counts of passing counterfeit.[3] The jury found Malone guilty on all counts of the amended indictment. Malone appeals.

## I.

Malone first argues that his conviction should be reversed because the government violated Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), by failing to produce material evidence favorable to him.[4]

The Secret Service interviewed Luckett the day after his arrest and Luckett signed a statement detailing his activities with Malone. Malone's trial started on April 4, 1994. On that day, a secret service agent sent an electronic mail message to the prosecutor, stating that the agent interviewed Luckett following the start of the trial and requesting the prosecutor to contact the agent. The prosecutor contacted the agent the next day. The agent told him that he had some notes from his most recent interview with Luckett, and that some of the details of Malone's and Luckett's activities differed from Luckett's account at the time of his arrest. The prosecutor got the notes from the agent and presented a copy to the court *in camera.* After reviewing the notes, the district court determined that the notes did not qualify as Jencks[5] material but nevertheless should be turned over to the defense.

Malone alleges three violations of Rule 16. First, the government's failure to turn over the agent's electronic mail message. Second, the government's failure to immediately turn over the agent's notes. Malone contends that he was unable to fully cross-examine Luckett because he did not get the agent's notes until after Luckett testified. Third, Malone argues the government violated Rule 16 by failing to present a list of items seized from the search of his residence. Although the government did provide a copy of the portion of the $100 bill seized from Malone's residence to the defense before trial, the government did not provide Malone a list or make available for inspection the other items seized from his residence before trial.

The government is required to disclose to the defense and make available for inspection any statements by the defendant, relevant documents and tangible objects. Fed.R.Crim.P. 16(a)(1)(A) and (C). Neither the electronic mail message nor the agent's notes qualify as Rule 16 material because these items constitute the agent's impression of his interview with Luckett, not a statement by Luckett. Fed.R.Crim.P. 16(a)(2). *See United States v. Willis,* 997 F.2d 407, 413–14 (8th Cir.1993) (FBI reports are not "statements" subject to the Jencks Act), *cert. denied,* — U.S. —, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994). Moreover, the record before us reveals that the electronic mail message did nothing more than result in the prosecutor contacting the agent to obtain the notes, and the government provided the agent's notes to the defense. Malone's argument that he was unable to effectively cross examine Luckett is unpersuasive. Malone's attorney cross-examined Luckett about the inconsistencies between his trial testimony and the statement he made the day of his arrest. In addition, after Malone obtained the notes, the court offered Malone the opportunity to recall Luckett. Although the government should have disclosed a list of the items seized from Malone's residence before trial and made the items available for inspection, the district court prohibited the

---

3. Counts II through IV charged that Malone passed counterfeit bills at three bars in Des Moines.

4. Malone merges his alleged Rule 16 and *Brady* violations. We recently reiterated *"Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Roach,* 28 F.3d 729, 734 (8th Cir.1994). *Brady* requires the government to furnish Malone all exculpatory evidence in its possession or reasonably available to it. *Id.* There was no *Brady*

violation here. The government provided Malone with almost all of the items about which he complains. In addition, Malone makes no colorable argument that the information he did not receive was exculpatory.

5. The Jencks Act requires the production of any statements made by a government witness upon motion of the defendant after the witness has testified on direct examination for the prosecution. *See* 18 U.S.C. § 3500 (1988).

prosecution from introducing the items at trial or eliciting testimony regarding them. Malone, therefore, cannot argue that he was substantially prejudiced. *See United States v. Williams,* 902 F.2d 675, 677 (8th Cir.1990).

## II.

Malone next argues that the district court erred when it failed to suppress evidence derived from the warrantless search of his car. Malone contends that the stop was pretextual, that the illegal turn was conduct typical of a broad category of innocent people, and that the officers lacked a reasonable articulable suspicion to detain him under *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889 (1968).

A traffic violation, however minor, creates probable cause to stop a vehicle. *United States v. Garcia,* 23 F.3d 1331, 1334 (8th Cir.1994) (citing *United States v. Cummins,* 920 F.2d 498, 500 (8th Cir.1990), *cert. denied,* 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991)). Thus, the stop was not pretextual.[6] *United States v. Woodall,* 938 F.2d 834, 837 (8th Cir.1991).

Next, we must consider whether the resulting detention was reasonably related in scope to the circumstances which justified the stop. *United States v. Ramos,* 42 F.3d 1160, 1163 (8th Cir.1994); *Cummins,* 920 F.2d at 502. Here, after pulling the car over, the officers noticed Luckett move suspiciously as if he was putting something under the seat. The officers found a knife in Malone's pocket during a pat-down search for weapons. After asking Malone to sit in the patrol car, they saw a clip of ammunition in the front seat. The totality of these circumstances meet the reasonable articulable suspicion standard of *Terry,* permitting the officers' limited search of the car's interior. *Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983) (once reasonable articulable suspicion is established, a limited search of a car's interior is permissible); *Cummins,* 920 F.2d at 502.

## III.

Malone next argues that there was insufficient evidence that he passed or aided and abetted the passing of counterfeit bills. Specifically, he contends that there is insufficient evidence that he was involved in the passing of the counterfeit currency at the three locations charged in Counts II through IV, and that the mere possession of a counterfeit note is insufficient to support his conviction. *United States v. Olson,* 697 F.2d 273, 275 (8th Cir.1983) (citation omitted).

In reviewing the sufficiency of evidence, we view the evidence in the light most favorable to the jury's verdicts. We will reverse only if a reasonable jury must have a reasonable doubt about "the existence of one of the crime's essential elements." *United States v. Watson,* 953 F.2d 406, 408 (8th Cir.1992).

There was sufficient evidence that Malone was involved in the passing of counterfeit bills at the three bars. Luckett testified that Malone drove him to various bars where he passed the counterfeit bills and split the proceeds with Malone. When arrested, Malone had $1,246 cash. The jury could also reasonably find that Malone had the intent to defraud, based on Malone's possession of the master bill used for the counterfeit bills recovered from the bars. *See United States v. Armstrong,* 16 F.3d 289, 293 (8th Cir.1994) (existence of notes with identical serial numbers recovered from establishments defendants visited is evidence of intent to defraud). Luckett's credibility was an issue for the jury. *United States v. Wilson,* 424 F.2d 997, 998 (8th Cir.1970) (per curiam).

## IV.

Malone argues that the district court abused its discretion in refusing to grant a mistrial based on prosecutorial misconduct. Malone contends the prosecutor referred to his failure to testify during opening and closing arguments by stating "the testimony of the defendant" and "the defendant sitting here in this courtroom today." He also ar-

6. Malone pled guilty to the charge of making an unsafe turn.

gues that the prosecutor misstated the law by implying that there was a presumption against innocence.

■ We reverse for prosecutorial misconduct only when the defense can show that the prosecutor's remarks were improper and that the remarks "prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." *United States v. Hernandez,* 779 F.2d 456, 458 (8th Cir.1985) (citations omitted).

■ We conclude that none of the statements were improper or deprived Malone of a fair trial. The prosecutor's first statement was a simple confusion of Luckett and Malone. The prosecutor stated: "Now, the testimony is not expected to be perfect because nothing is ever perfect in this world, and, in fact, the testimony of the defendant you'll find is he doesn't remember—excuse me, I'm sorry." The prosecutor immediately corrected himself stating: "Mr. Luckett. I misspoke. The testimony of Mr. Luckett is that he does not recall all of the places that he was driven...." The misstatement did not deprive Malone of a fair trial. The prosecutor made the statement while previewing Luckett's testimony for the jury. The prosecutor apologized and corrected himself even before Malone had a chance to object. Similarly, we do not interpret the statement that "the defendant sitting here in this courtroom that the evidence points at" as a direct comment on Malone's failure to testify. *See United States v. Kragness,* 830 F.2d 842, 868–69 (8th Cir.1987). Even if we thought the statement was a comment on Malone's failure to testify, the court properly instructed the jury that it could not consider that Malone did not testify, and had no burden of proving anything. Any error was harmless. *Id.* at 869–70. We also do not believe that reversible error occurred because the prosecutor confused words during his closing argument. The prosecutor stated:

A defendant in a case comes into a courtroom cloaked in a presumption of evidence. This case is like a case in which that presumption of evidence that has cloaked the defendant, however, has been slowly yet definitely, deliberately, inch by inch, been slowly stripped away by the hard evidence, by the physical evidence that has been admitted in this case.

■ Although Malone concedes that the prosecutor meant to say the "presumption of innocence," rather than "presumption of evidence," he argues the mistaken words misled the jury. The prosecutor did not deprive Malone of a fair trial by confusing the words "evidence" and "innocence." The court correctly instructed the jury as to the prosecution's burden of proof and Malone's presumption of innocence.

## V.

■ Finally, Malone attacks his sentence,[7] arguing that the court improperly enhanced his sentence under U.S.S.G. § 2B5.1(b)(2) (Nov.1994). That section provides: "If the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting, and the offense level determined above is less than 15, increase to 15." *Id.*

Malone contends that the government failed to prove by a preponderance of the evidence that he "manufactured or produced" counterfeit bills or "possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting." Citing *United States v. Nichols,* 979 F.2d 402 (6th Cir.1992), *aff'd on other grounds,* —— U.S. ——, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), Malone argues that the district court cannot consider the computer equipment[8] as evidence that he manufactured or produced counterfeit bills because that evidence was not admitted at trial. Malone also says that

---

7. The district court sentenced Malone to thirty-seven months imprisonment on each of the four counts, to be served concurrently.

8. At trial, the district court prevented the prosecution from introducing a computer manual to

scanner software, an ink cartridge, and other computer materials seized from Malone's residence because the government did not produce this evidence to the defense for inspection before trial. *See* Fed.R.Crim.P. 16(a)(1)(C).

the government cannot meet its burden based on the unreliable testimony of Luckett.

The Sixth Circuit in *Nichols* stated in dicta that evidence "illegally seized during the investigation or arrest of the defendant for the crime of conviction" could not be used in sentencing. 979 F.2d at 410–11. Later, the Sixth Circuit, following the majority of other circuits, disavowed *Nichols*, holding that illegally seized evidence could be used for sentencing purposes as long as the evidence was not obtained to enhance the sentence. *United States v. Jenkins*, 4 F.3d 1338, 1345 & n. 8 (6th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994). In any event, here, the court overruled the admission of the computer equipment during trial because the government failed to disclose the evidence to the defense before trial, Fed.R.Crim.P. 16(a)(1)(C), not because of an illegal seizure. The court properly considered the computer equipment in finding that Malone "manufactured or produced" counterfeit bills.

We also reject the attack on Luckett's credibility. The issue of Luckett's credibility is "virtually unreviewable on appeal." *See United States v. Candie*, 974 F.2d 61, 64 (8th Cir.1992).

■ The computer equipment, Luckett's testimony, Malone's possession of the master bill, as well as the recovery of a copied portion of a counterfeit bill from Malone's residence constitutes reliable evidence that Malone manufactured counterfeit bills.[9] *See United States v. Granandos*, 962 F.2d 767, 772 (8th Cir.1992) (sentencing court may consider any relevant information, provided that the information has "sufficient indicia of reliability to support its probable accuracy") (citation and internal quotations omitted).

We affirm Malone's convictions and sentence.

---

**9.** The district court did not submit the conspiracy to manufacture charge to the jury because of a lack of evidence of an agreement to manufacture, not a lack of evidence of manufacturing.