**UNITED STATES of America, Appellee,**

v.

**Paul W. MOORE, II, also known as Antoine Petroye Roberts, Appellant.**

No. 97–1351.

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1997.

Decided Nov. 4, 1997.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Dec. 16, 1997.

Ian Pitz, Minneapolis, MN, argued, for Appellant.

Kenneth Saffold, Minneapolis, MN, argued (David L. Lillehaug, U.S. Attorney, on the brief), for Appellee.

Before LOKEN and ROSS, Circuit Judges, and FENNER,[1] District Judge.

ROSS, Circuit Judge.

Appellant Paul W. Moore, II, appeals from a jury verdict finding him guilty of conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base, possession with intent to distribute cocaine, possession with intent to distribute cocaine base and felon in possession of a firearm. Moore was sentenced to 262 months on the drug counts and 120 months on the weapons violation, to run concurrently with the other sentence. On appeal, Moore asserts that the district court[2] erred in allowing the government to introduce evidence of a prior felony when he offered to stipulate to that offense; that the court erred in denying his motion for a *Franks* hearing and in refusing to order disclosure of the identity of the confidential informant; that prosecutorial misconduct denied him a fair trial and; finally, that the evidence was insufficient to sustain the guilty verdict. After careful review of the record,

---

1. The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

2. The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

as well as the briefs and arguments of the parties, we affirm the judgment of the district court.

## I.

The record shows that in the early morning hours of June 3, 1996, Minneapolis police officers observed Moore driving a vehicle erratically. The officers pursued, but the vehicle sped away at a high rate of speed. At one point during the incident, Moore stopped his vehicle. However, when the officers exited their patrol car, Moore's vehicle sped away, hitting the squad car in the process. The officers resumed their chase and observed Moore throw something out of the car window. Finally, Moore's car hit a tree and came to a stop. After a foot chase, Moore was apprehended. As the officers brought Moore back to the squad car, Moore stated, not in response to questioning, "there is a gun in the car." Six thousand dollars in cash and a small amount of marijuana was found on Moore. A gun was found in plain sight on the floor of the passenger side of the vehicle. The item thrown from the vehicle during the pursuit was found to contain approximately 250 grams of crack cocaine.

Soon after the arrest, the officers discovered that there was an active drug trafficking investigation involving Moore, a known member of the Los Angeles "Crip" street gang with an extensive violent history. They obtained a warrant to search an apartment at 1980 West 7th Street, which was believed to be Moore's stash house. At this location, the officers found approximately 1,000 grams of cocaine and arrested Walter Eugene Clayton and Russell Noah, Moore's cousins. The officers also found an airline ticket and other personal effects belonging to Moore.

## II.

Moore first argues on appeal that the district court abused its discretion when it rejected his offer to stipulate as to his status as a felon under 18 U.S.C. § 922(g)(1), and instead allowed the government to introduce evidence proving his prior conviction for drive-by shooting as an element of the offense of felon in possession. Moore contends that the district court's ruling, although supported by Eighth Circuit case law at the time of trial, has since been held to constitute reversible error by the United States Supreme Court in *Old Chief v. United States*, ─── U.S. ───, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

In *Old Chief*, the Supreme Court held that a district court abuses its discretion when it rejects a defendant's offer to stipulate his status as a felon under a section 922(g)(1) offense and instead admits the full record of a prior judgment, if evidence concerning the name or nature of the prior conviction increases the risk of a verdict tainted by improper considerations. *Id.* at ───, 117 S.Ct. at 647. This determination alone, however, does not compel reversal where the evidentiary ruling is found to be harmless error under Fed.R.Crim.P. 52(a). *See, e.g., United States v. Anaya*, 117 F.3d 447, 448–49 (10th Cir.1997); *United States v. Horsman*, 114 F.3d 822, 828 (8th Cir.1997). Under Rule 52(a), "only if the jury may have been substantially swayed by improperly admitted evidence must we reverse [the] conviction." *Horsman*, 114 F.3d at 828 (quotation omitted). "A nonconstitutional error is harmless unless it had a substantial influence on the jury's verdict in the context of the entire case, or leaves one in grave doubt whether it had such an effect." *Anaya*, 117 F.3d at 448 (citation omitted). Under a Rule 52(a) harmless error analysis, the government bears the burden of showing the absence of prejudice, *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993), and they have sustained it in this case.

We conclude that Moore is not entitled to relief because any error in refusing to accept Moore's stipulation was harmless given the substantial evidence of Moore's guilt. Following the chase with police officers, Moore admitted that there was a firearm in the vehicle he was driving. The baggie thrown from Moore's car was found to contain crack cocaine. There was no evidence shown that anyone else was in the car with Moore. This evidence clearly supports the weapons and crack possession convictions. The proof relating to the evidence seized at 1980 West 7th Street is a bit more tenuous; however, we conclude the evidence was sufficient to withstand harmless error analysis. Numer-

ous personal articles belonging to Moore were found in the apartment. Personal papers, including an airline receipt, a driver's license receipt, and a Hennepin County Workhouse sentencing document, all bearing Moore's name, as well as photographs of Moore, were found in or next to a bag located in the same closet where the 1,000 grams of cocaine were found. The apartment was described as a "stash house," and the apartment manager informed police officers that a vehicle matching Moore's was seen at the apartment on several occasions. In light of the substantial evidence of Moore's guilt, we conclude that the improper evidentiary ruling did not affect Moore's substantial rights, and therefore, any error in the admission of Moore's prior felony was harmless.

### III.

■■■ Moore next contends that his request for a *Franks* hearing was improperly denied when he introduced evidence casting doubt on the accuracy of information contained in the search warrant's supporting affidavit. In order to be entitled to a hearing under *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), the defendant must make a "substantial preliminary showing" of a false or reckless statement or omission and must further show that the alleged false statement or omission was necessary to a finding of probable cause. *United States v. Fairchild,* 122 F.3d 605, 610 (8th Cir.1997). The "substantial preliminary showing" requirement needed to obtain a *Franks* hearing is not lightly met. *United States v. Hiveley,* 61 F.3d 1358, 1360 (8th Cir.1995).

After reviewing the record, we determine that the district court did not abuse its discretion in denying Moore's motion for a *Franks* hearing. The challenged supporting affidavit related that the affiant had received information from a confidential informant that Moore lived at the Highland Apartments and that his vehicle had been observed at that location. The affiant also averred that he received information from a confidential informant that there had been complaints of a marijuana odor to the management of the apartments.

In support of his request for a *Franks* hearing, Moore submitted his own affidavit stating that he did not live in the Highland Apartments and that no vehicle owned by him had ever been in that vicinity. This affidavit, without more, does not provide the "substantial preliminary showing" that the supporting affidavit contained any deliberate false statements or intentional or reckless misrepresentations required to support a *Franks* hearing. When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required. The district court properly denied the hearing.

### IV.

■■■ Moore next argues the district court abused its discretion in failing to order the government to disclose the identity of its confidential informant. The defendant bears the burden of demonstrating the need for disclosure and the court must weigh the defendant's right to the information against the government's privilege to withhold the identity of its confidential informants. *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). It is well established that in "tipster" cases, where the informant is not a necessary witness to the facts, disclosure of the informant is not required. *United States v. Sykes,* 977 F.2d 1242, 1245–46 (8th Cir.1992); *United States v. Harrington,* 951 F.2d 876, 878 (8th Cir. 1991).

During cross-examination of Officer Liz Holland, Moore's counsel elicited testimony that a confidential informant received information that Moore had a connection with a pager company, which Officer Holland characterized as an untrustworthy organization currently under investigation. The district court rejected defense counsel's efforts to identify the confidential informant in order to impeach the credibility of the informant's tip.

The court did not abuse its discretion in failing to order disclosure of the informant's identity. The informant in this case was merely a tipster who conveyed information to the government; there was no evidence that he or she witnessed or participated in the

actual offense. In cases such as this, "disclosure is generally not material to the outcome of the case and is therefore not required." *Id.* at 878.

## V.

 Moore next argues that the prosecutor committed prejudicial misconduct by expressing a personal opinion on the issue of Moore's guilt and calling attention to Moore's failure to testify. We reverse for prosecutorial misconduct only when the defense can show that the prosecutor's remarks were improper and that the remarks "prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." *United States v. Malone,* 49 F.3d 393, 398 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 208, 133 L.Ed.2d 141 (1995).

Here, the prosecutor stated:

Unlike a novel or a television program or a good book, trials oftentimes don't proceed in any chronological order. Sometimes, for example, a person knowing the first part of a series of events will be the last to testify. In other instances, a person knowing the last part of a series of events will be the first to testify. And indeed on some instances a person knowing all of the evidence won't testify at all. And sometimes the chronological order is not quite as one would expect. So, the purpose of the opening statement is simply to provide you, the jurors, with an overview of the evidence that we think will be presented.

Moore claims the prosecutor propounded on his theme of Moore's failure to testify by repeatedly informing the jury that the evidence was "uncontroverted" and "uncontradicted," and that there was "no evidence" exculpating Moore.

 Indirect comments on a defendant's failure to testify constitute error when the comments show the prosecutor intended to call attention to the defendant's failure to testify or if the jury would naturally and necessarily understand the comments as highlighting the defendant's failure to testify. *United States v. Adams,* 37 F.3d 383, 384 (8th Cir.1994). We conclude that the statements in context did not manifest an improper intent to comment on Moore's failure to testify and that the jury would not necessarily take it to be such a comment. Instead, the prosecutor was merely stating the purpose of an opening statement and the chronology of events during a trial. Statements that the government's evidence was "uncontradicted" were simply in reference to the strength and clarity of the government's evidence presented at trial. *See United States v. Emmert,* 9 F.3d 699, 702–03 (8th Cir.1993), *cert. denied,* 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994) (comments that "there is no evidence," "no testimony," and "no explanation," did not manifest an intention by the prosecutor to call attention to defendant's failure to testify).

 We also reject Moore's assertion that the prosecutor improperly injected his personal opinion into closing argument by stating "I believe in what I do," and "my responsibility … is to show you [Moore's] guilt." Contrary to Moore's assertion, these statements are not personal expressions of Moore's culpability; these comments were innocuous, isolated statements that can in no way be construed as improper.

## VI.

Finally, based on our harmless error analysis presented above in subsection II, we conclude the evidence was sufficient to sustain the conviction.

## VII.

Based on the foregoing, the judgment of the district court is affirmed.