# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-1579

———————

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Eastern District of Missouri |
| Leonard D. Triplett, | * |
| | * |
| Appellant. | * |

———————

Submitted:   September 17, 1999

Filed:   October 28, 1999

———————

Before McMILLIAN and MURPHY, Circuit Judges, and TUNHEIM, District Judge.[1]

———————

McMILLIAN, Circuit Judge.

Leonard D. Triplett appeals from a final judgment entered in the United States District Court[2] for the Eastern District of Missouri upon a jury verdict finding him guilty on two counts of possession with intent to distribute heroin, in violation of 21

—————————————

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

U.S.C. § 841(a)(1). See United States v. Triplett, No. 4:98CR131RWS (E.D. Mo. Mar. 2, 1999) (judgment). For reversal, Triplett argues that the district court (1) erred in denying his motion for a mistrial asserted on the grounds that the prosecutor's closing argument improperly commented upon his failure to testify at trial and misled the jury about his burden of proof and (2) abused its discretion in excluding expert testimony proffered by the defense and in denying his request to have the jury view the sites where the offenses allegedly occurred. For the reasons stated below, we affirm.

## Jurisdiction

Jurisdiction was proper in the district court based upon 18 U.S.C. § 3231. Jurisdiction is proper in this court based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## Background

Factual background

The government's evidence at trial is summarized as follows. On January 30, 1998, at approximately 8:30 p.m., police officer Daryl Walker and his partner, David Golliday, were on patrol duty in the City of St. Louis, Missouri, when a citizen flagged them down and informed them of drug trafficking activity in the 1700 block of Bacon. Walker and Golliday proceeded to the 1700 block of Coleman, one block east of Bacon, and parked their patrol car. Walker put on coveralls to conceal his uniform and walked to an unlit gangway where he could observe the area in question. During a period of about twenty minutes, Walker saw approximately ten people approach an individual standing in front of 1723 Bacon. The individual appeared to be taking cash from each person in exchange for a small item retrieved from a plastic bag in his hand. The individual matched the description provided by the citizen informant. Walker returned to the patrol car, and he and Golliday proceeded to the 1700 block of Bacon

in the patrol car. As they drove to the place where the individual had been observed, they at first kept their headlights off, then turned their headlights on as they approached the location. They saw the individual in question drop something in the grass and proceed up the steps of the residence at 1721 Bacon. Walker found a plastic sandwich bag in the grass. It contained several clear capsules, each with a brown substance inside. The individual was placed under arrest, informed of his rights, and handcuffed. He was searched incident to the arrest and a plastic grocery bag containing $906.00 in bills of $20 or less was found on his person. He was later identified as Leonard Triplett.

On February 5, 1998, at approximately 12:15 a.m., police officers Stephen Bendel and his partner, Richard Ahern, were on patrol duty in the City of St. Louis when they observed a car with the headlights off driving down an alley near Marcus and Page. As they drove toward the car, the officers shone their headlights and spotlight on the vehicle, made a U-turn behind the car, and stopped the car. When asked for a driver's license, the driver of the vehicle told the officers that he did not have one. He was ordered to exit the car. Upon exiting the car, he pushed Officer Ahern to the ground, reached into his right front pants pocket, and pulled out an item which he threw onto the driver's seat. Officer Bendel subdued the individual and handcuffed him, then retrieved a small plastic bottle from the car. It contained several clear capsules, each with a brown substance inside. The driver was placed under arrest, informed of his rights, and handcuffed. He was searched incident to the arrest and $328.00 in bills of $20 or less were found on his person. The individual was identified as Leonard Triplett.

Procedural history

Triplett was indicted in the Eastern District of Missouri on March 26, 1998, on two counts of possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). He filed a motion in limine requesting (1) that he be allowed to present

at trial the testimony of Randy Burkett, an architectural engineer who would render an opinion on night-time lighting conditions at the sites of Triplett's two arrests, and (2) that the jury be taken at night to view the scenes of his arrests.

The case was tried before a jury beginning on December 9, 1998. Officers Walker and Golliday testified regarding the events of January 30, 1998, and Officers Bendel and Ahern testified about the events of February 5, 1998. On cross-examination, defense counsel questioned Walker and Golliday about apparent inconsistencies in their pre-trial statements and their trial testimony, and cross-examined Bendel and Ahern about their ability to see Triplett's car under the conditions to which they testified, among other matters.

During Walker's testimony, in response to a question by the prosecutor on redirect examination, Walker began saying: "We even conducted an interview of Mr. Triplett – or attempted to conduct an interview of Mr. Triplett, which – ." At that point, defense counsel objected and moved for a mistrial on the ground that the government's witness had improperly commented on Triplett's post-arrest silence in violation of Triplett's Fifth Amendment privilege against self-incrimination. The district court took an immediate recess and held a brief hearing on the motion. The district court denied the motion, explaining:

> [G]iven the whole context of the testimony so far, I will deny the mistrial, because I do believe that the Eighth Circuit set forth in Sidebottom v. Delo, 46 F.3d 744, [759 (8th Cir.), cert. denied, 516 U.S. 849 (1995),] that the question is whether there is an intention to call attention to the defendant's failure to testify, and whether the jury would have naturally understood . . . [the witness's testimony] as a comment on defendant's failure to testify.
> I don't think that [the witness's testimony] reached that threshold.

Trial Transcript, Vol. 2, at 84.

The district court then instructed the prosecutor: "meet with your witnesses in this case, because any further comment of that sort, and then we will get perilously close to the line where a mistrial may be required, if that sort of testimony is elicited in the future, intentionally, or unintentionally." Id.

On the third day of trial, out of the presence of the jury, the district court held a Daubert[3] hearing at which Burkett, the expert witness for the defense, proffered his testimony and counsel presented arguments regarding its admissibility. See Trial Transcript, Vol. 3, at 2-61. Later that day, after the government had rested, the district court ruled that Burkett's testimony would be excluded under Daubert and further denied Triplett's request for a night time viewing by the jury of the arrest sites. See id. at 248-51.

The witnesses for the defense included two residents of the 1700 block of Bacon who had seen Triplett being arrested on the night of January 30, 1998. One stated that she was on Bacon immediately before Triplett's arrest and saw Triplett drive up to the 1700 block of Bacon, exit his vehicle, and knock on the door of the residence at 1721 Bacon. At that point, she testified, the police pulled up, approached Triplett, frisked him, and handcuffed him. See id. at 252-58. The other witness testified that he had been standing on the front porch of his residence at 1717 Bacon, next door to 1721 Bacon, when he saw Triplett walk up to the residence at 1721 Bacon and knock on the door. About that time, he testified, the police pulled up, approached Triplett, frisked him, and handcuffed him. The same witness testified that, although he did not see Triplett exit a car, he (the witness) had been standing on his front porch for approximately thirty minutes before observing Triplett approaching the residence at 1721 Bacon and had not seen Triplett in the vicinity beforehand. See id. at 287-96. Triplett elected not to testify. See id., Vol. 4, at 3.

---

[3]Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

In the rebuttal portion of closing arguments, the prosecutor argued to the jury: "What you didn't hear was evidence that the defendant didn't possess the drugs. You never heard that. You never heard evidence that the defendant didn't know that he possessed the drugs." Id. at 125-26. Defense counsel immediately objected, stating: "That is an improper argument, suggesting we had an obligation." Id. at 126. The district court then admonished the prosecutor: "No commenting on the defendant. Please proceed." Id.

After the jury instructions were given, defense counsel moved for a mistrial based upon the prosecutor's rebuttal argument. See id. at 144-45. Defense counsel argued to the district court that the comments were not responsive to any argument he had made in his closing argument. See id. at 145 ("I made sure I didn't make any statements about what they heard or anything of that nature."). The district court denied the motion, stating "she [the prosecutor] didn't even obliquely reference your client's failure to testify." Id. The district court then opined that, in any event, the jury instructions "cured" any problem that might have resulted from the prosecutor's closing argument. Id.

The jury found Triplett guilty on both counts. Triplett was sentenced to 210 months imprisonment[4] and three years of supervised release, and he was assessed $200.00 in penalties. Triplett appealed.

**Discussion**

Prosecutor's closing argument

Triplett argues that the district court erred in denying his motion for a mistrial based upon indirect references to his silence at trial made by the prosecutor in the

---

[4]Triplett was sentenced as a career offender pursuant to U.S.S.G. § 4B1.1.

rebuttal portion of her closing argument. See Trial Transcript, Vol. 4, at 125-26 ("What you didn't hear was evidence that the defendant didn't possess the drugs. You never heard that. You never heard evidence that the defendant didn't know that he possessed the drugs."). Triplett first argues that the prosecutor's comments violated his rights under the Fifth Amendment. See Griffin v. California, 380 U.S. 609, 614 (1965) ("[w]e . . . hold that the Fifth Amendment, in its direct application to the Federal Government . . . forbids . . . comment by the prosecution on the accused's silence"). We agree.

"It is well established that prosecutorial misconduct in closing arguments may result in reversal of a conviction. However, the trial court has broad discretion in controlling closing arguments and this court will not reverse absent a showing of an abuse of discretion." United States v. Johnson, 968 F.2d 768, 769 (8th Cir. 1992) (citations omitted). It is also well established that prosecutorial misconduct occurs when the prosecutor comments at trial, directly *or indirectly*, on the defendant's failure to testify. See Sidebottom v. Delo, 46 F.3d at 759. "Indirect references to a defendant's failure to testify are . . . prohibited if they either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally have understood them as a comment on the defendant's failure to testify." Id. (citations and internal quotation marks omitted); see also United States v. Durant, 730 F.2d 1180, 1184 (8th Cir.) (same), cert. denied, 469 U.S. 843 (1984). As this court indicated in Sidebottom v. Delo, a prosecutor may not comment on a defendant's failure to present evidence to contradict the government's case if "the defendant alone had the information to do so." 46 F.3d at 759 (quoting Richards v. Solem, 693 F.2d 760, 766 (8th Cir. 1982), cert. denied, 461 U.S. 916 (1983)).

In the present case, the government presented evidence suggesting that Triplett acted alone in distributing heroin. The jury, therefore, would have reasonably understood the prosecutor's statement – "What you didn't hear was evidence that the

defendant didn't possess the drugs" – as a reference to Triplett's silence at trial because, according to the government's own theory of the case, no one other than Triplett himself could have testified about his possession of the drugs. Triplett "alone had the information to do so." Sidebottom v. Delo, 46 F.3d at 759. Even more problematic is the prosecutor's statement – "You never heard evidence that the defendant didn't know that he possessed the drugs." That comment could *only* have been understood by the jury as a reference to Triplett's silence at trial because only Triplett could deny his own *knowledge* that he possessed the drugs.

In addition, we conclude from reviewing the record in the present case that the challenged comments were not justified on the ground that they were responsive to defense counsel's closing argument. Finally, contrary to the government's assertion, the challenged comments are not analogous to "[s]tatements that the government's evidence was 'uncontradicted,'" which were held by this court in United States v. Moore, 129 F.3d 989, 993 (8th Cir. 1997), cert. denied, 118 S. Ct. 1402 (1998), not to be improper because, in that case, they were made "simply in reference to the strength and clarity of the government's evidence presented at trial."[5] In sum, we hold

---

[5]We caution that there is no *per se* rule that the type of comments made by the prosecutor in United States v. Moore, 129 F.3d 989 (8th Cir. 1997), cert. denied, 118 S. Ct. 1402 (1998), will "always" be permitted – as was unequivocally and incorrectly asserted by the government in oral argument. This court stated in Moore that the prosecutor's comments "in context" were not improper. Id. at 993. Indeed, as this court specifically explained in United States v. Durant, 730 F.2d 1180, 1184 (8th Cir.) (citations omitted), cert. denied, 469 U.S. 843 (1984):

> comments such as references to "uncontradicted testimony" may constitute error . . . when the statements either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally and necessarily take them as a comment on the defendant's failure to testify. Both tests require attention to the context of the prosecutor's remarks – the argument itself, and the larger context of the evidence introduced at trial.

that the challenged remarks in the prosecutor's closing argument were such that the jury would naturally and necessarily have understood them as comments on Triplett's failure to testify, and, as a result of those remarks, the government violated Triplett's rights under the self-incrimination clause of the Fifth Amendment.[6] See Griffin v. California, 380 U.S. at 614. The district court's conclusion to the contrary was technically an abuse of discretion.

However, our conclusion that the prosecutor's comments violated Triplett's Fifth Amendment right to remain silent does not end our inquiry. The law is well settled that the jury's guilty verdict will not be set aside if this type of constitutional error was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 22-24 (1967) (Chapman). Under Chapman, the government bears the burden of proof on the harmless error question. Id. at 24 ("[c]ertainly error, constitutional error, in illegally

---

We also reject the government's comparison of the present case to United States v. Adams, 37 F.3d 383, 384 (8th Cir. 1994) (per curiam) (denial of motion for mistrial not an abuse of discretion where prosecutor, in the rebuttal portion of closing argument, mistakenly referred to the defendant rather than defense counsel and, upon realizing the mistake, immediately corrected himself), and United States v. Emmert, 9 F.3d 699, 702-03 (8th Cir. 1993) (denial of motion for mistrial not an abuse of discretion where prosecutor's statements during rebuttal portion of closing argument that there was "no evidence," "no testimony" or "no explanation" to counter the government's theory of the case "occurred in the context of summarizing a witness's testimony" and was "in response to the closing argument of [defense] counsel"), cert. denied, 513 U.S. 829 (1994). Both cases are clearly distinguishable from the case at bar.

[6]We disagree, however, with Triplett's argument that the prosecutor's comments additionally violated his Fifth Amendment right to due process by suggesting to the jury that it was his burden to prove his innocence. This case is distinguishable from United States v. Roberts, 119 F.3d 1006 (1st Cir. 1997), upon which Triplett relies to support his due process argument. In United States v. Roberts, the prosecutor explicitly argued to the jury that, "when a defendant does 'go forward' to offer evidence, 'the defendant has the same responsibility [as the government] and that is to present a compelling case.'" Id. at 1015.

admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless"). But see United States v. Malone, 49 F.3d 393, 398 (8th Cir.) (stating, *in dictum*, that "[w]e reverse for prosecutorial misconduct only when the defense can show . . . that the [prosecutor's improper] remarks 'prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial'"), cert. denied, 516 U.S. 877 (1995). In assessing harmlessness, "[t]he question a reviewing court must ask is this: absent the prosecutor's [improper comments], is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" United States v. Hastings, 461 U.S. 499, 510-11 (1983). More specifically, "[i]n determining the prejudicial effect of prosecutorial misconduct, this court considers three factors:  (1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the trial court." United States v. Johnson, 968 F.2d at 771 (citations omitted).

In the present case, the government argues that there was no "cumulative effect" because there was "no attempt, actual or implied," to link the challenged testimony of Officer Walker with the prosecutor's improper comments in closing arguments. Brief for Appellee at 24. Second, the government argues that the properly admitted evidence of Triplett's guilt was "overwhelming." Id.[7] Third, the government notes that, except for the instruction to the prosecutor not to comment on the defendant, no additional

---

[7]The government argues that the evidence of guilt was overwhelming because: the arrests occurred within three weeks of each other; different officers were involved each time; distributable amounts of heroin were found in Triplett's possession each time; he had substantial amounts of money on him each time, even though he was unemployed during the relevant time frame; and the house which he was purportedly visiting at the time of his January 30th arrest was not a residence at which the occupants would have expected him to visit (based upon the testimony of Jermaine Gibbs, whose mother lived at 1721 Bacon). See Brief for Appellee at 24-25.

curative measures were taken by the district court at defense counsel's own request. See id. at 25.

Triplett, on the other hand, argues that the government has failed to show that the prosecutor's improper comments were harmless beyond a reasonable doubt because: (1) cumulative error occurred based upon the earlier testimony by Officer Walker; (2) two witnesses for the defense "directly contradicted the police officers' version of the events"; and (3) the credibility of the four police officers was seriously in doubt based upon contradictions between Officers Walker's and Golliday's pre-trial statements and their testimony at trial and the implausibility of Officers Bendel's and Ahern's testimony.[8]  See Brief for Appellant at 13-15.

Upon careful review, we conclude that the cumulative effect of the constitutional errors in the present case was minimal. Walker's testimony only vaguely and indirectly referred to Triplett's post-arrest silence before the testimony was quickly terminated upon defense counsel's timely objection.  Nor was there any apparent connection between that occurrence and the prosecutor's improper statements in closing arguments. Given this minimal cumulative effect, the substantial amount of properly-admitted evidence of Triplett's guilt,[9] and the district court's prompt warning to the prosecutor,

---

[8]Triplett argues that Officers Bendel's and Ahern's testimony "borders on the incredible" because "[t]he officers testified that while driving at 12:15 in the morning at between 25 and 30 mph, they were able to see an unlit vehicle in a dimly lit alley some 380 feet from their car."  Brief for Appellant at 14-15.

[9]At oral argument in present case, Triplett's counsel suggested that, where there has been a finding of prosecutorial misconduct and the effect of that misconduct upon the jury's deliberations cannot be known, the evidence should be viewed in a balanced manner when applying the harmless error rule.  In other words, it would be inappropriate under such circumstances to view the evidence in the light most favorable to the government and, in particular, credibility issues should not automatically be resolved in the government's favor.  We do not dispute that argument.  We recognize that a finding of harmless error will be less likely where there are genuine and material

-11-

we are constrained to hold that the government has met its burden of establishing that the constitutional error was harmless beyond a reasonable doubt in this case.

District court's evidentiary rulings

Triplett separately argues that the district court abused its discretion in excluding the testimony of his "lighting expert," Randy Burkett, on the basis that Burkett's testimony did not meet the standards under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) (Daubert).

We review the district court's decision to exclude Burkett's expert testimony under Daubert for an abuse of discretion. See, e.g., Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, ___, 119 S. Ct. 1167, 1176 (1999) (in reviewing a trial court's decision to admit or exclude expert testimony under Daubert, court of appeals must apply abuse of discretion standard, and "[t]hat standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion") (citing General Elec. Co. v. Joiner, 522 U.S. 136, 138-39 (1997)). Under Daubert, the district court must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 598. In the present case, the district court expressed doubts about the reliability of Burkett's testimony because:

_____

doubts about the credibility of the government's witnesses, as compared with cases where credibility has not been effectively challenged. "If the evidence of guilt is overwhelming, an improper argument is less likely to affect the jury verdict. On the contrary, if the evidence of guilt is weak or tenuous, the existence of prejudice is more easily assumed." United States v. Johnson, 968 F.2d 768, 772 (8th Cir. 1992) (quoting United States v. Splain, 545 F.2d 1131, 1135 (8th Cir. 1976)). The harmless error standard requires us to consider, in each case, "the context of the prosecutor's remarks – the argument itself, and the larger context of the evidence introduced at trial." United States v. Durant, 730 F.2d at 1184. We therefore view the evidence in its entirety. In so doing, it is within our province to take into consideration the magnitude and significance of credibility issues.

> [Burkett] repeatedly said that his efforts could not measure what people can see, that this was not a measurement of visibility.
>
> . . . .
>
> But when he tried to express any opinion about whether something could be seen or not seen at a distance at a certain time of the day, he didn't refer to his test.
>
> He said that it was based upon what he was visibly able to see by his own experience.

Trial Transcript, Vol. 3, at 248-49.

The district court further expressed doubts about the relevance of Burkett's testimony because:

> [Burkett] said . . . that the streetlight and alleyway were not unlike any other alley or causeway that you would encounter anywhere in the City of St. Louis.
>
> The lighting was not unique, the standards were not unique, the design was not unique. He was very clear that this was typical.
>
> . . . .
>
> Given the limitations of his testimony, and given what he did say about the nature of the lighting in the area, I think he would not add anything, any testimony or any evidence to this case, that we should not . . . otherwise trust to the jurors' common sense.

Id. at 249-50.

Upon review of the record in the present case, we cannot say that the district court abused its discretion in excluding Burkett's expert testimony, having concluded that the testimony would not assist the jury's understanding of the evidence. See, e.g., United States v. Johnson, 28 F.3d 1487, 1496-97 (8th Cir. 1994) ("when determining the admissibility of expert testimony, the relevant inquiry is whether [the expert's] testimony would be 'helpful' to the jury's understanding of the evidence") (citing Daubert, 509 U.S. at 597), cert. denied, 513 U.S. 1098 (1995).

-13-

Triplett also maintains that the district court abused its discretion in denying his request for a night-time jury viewing of the two arrest sites.  He argues that, without seeing the actual places at night, the jury could not effectively determine whether the police officers had been truthful in their testimony – especially in the absence of Burkett's expert testimony at trial.

The trial court's decision to allow or disallow a jury viewing of an alleged crime scene is highly discretionary.  "The federal courts recognize their inherent power to permit a jury view of places or objects outside the courtroom.  The decision to permit a view is entrusted to the sound discretion of the trial court."  United States v. Passos-Paternina, 918 F.2d 979, 986 (1st Cir. 1990) (citations omitted), cert. denied, 449 U.S. 982 (1991).  In the present case, the evidence presented at trial included photographs and diagrams of the sites of Triplett's arrests, as well as witness testimony regarding the circumstances and conditions at those locations at the relevant times.  Therefore, notwithstanding Triplett's claim that a jury view of the arrest sites would have been critically helpful to the jury's assessment of the police officers' credibility, we hold that the district court did not abuse its discretion in denying Triplett's jury view request.  See, e.g., United States v. Crochiere, 129 F.3d 233, 236 (1st Cir. 1997) ("Although a view might have had some indirect impact on the jury's assessment of witness credibility, Crochiere had ample opportunity to, and did, impeach the witnesses' credibility in a variety of ways at trial."), cert. denied, 118 S. Ct. 1364 (1998); United States v. Johnson, 767 F.2d 1259, 1273 (8th Cir. 1985) ("Because a jury view would have been time-consuming and cumulative of photographic evidence and the testimony, the district court did not abuse its discretion in denying the view request.").

## Conclusion

For the reasons stated, the judgment of the district court is affirmed.

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.