# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1103

_____

William Lovelle Stringer,                  *
                                          *

                Appellee,        *

                                          *

    v.                                 *

                                          *

Paul Hedgepeth,                   *

                                          *

              Appellant.     *

Appeals from the United States
District Court for the
Southern District of Iowa.

_____

No. 01-1106

_____

William Lovelle Stringer,         *

                                          *

                Appellant,     *

                                          *

    v.                                 *

                                          *

Paul Hedgepeth,                   *

                                          *

              Appellee.      *

_____

Submitted:  November 14, 2001

Filed:  February 6, 2002
_____

Before LOKEN, LAY, and HEANEY, Circuit Judges.
_____

HEANEY, Circuit Judge.


The State of Iowa appeals from the order of the district court granting William Lovelle Stringer's petition for habeas corpus, pursuant to 28 U.S.C. § 2254.  Stringer is serving a life sentence for murder.  We reverse the district court's grant of habeas relief.


I.    BACKGROUND


On November 4, 1986, an intruder armed with a sawed-off shotgun broke through the front door of a home occupied by Lyn Ballard, Kevin Colburn, and Jim Clay.  The intruder was an African-American male wearing makeup on his face, a stocking cap, a black coat, and black pants.  He also had a nylon pulled down over his head.  The intruder grabbed Ballard, held a gun to her head, and demanded that she give him money or drugs.  Colburn ran upstairs to call police.

While Colburn proceeded upstairs, Clay came into the room and pleaded with the intruder to release Ballard.  The intruder complied, but began to push Clay up the stairway.  Both Colburn and Ballard took this opportunity to flee to a neighbor's to call the police.  Minutes later, they heard a gunshot and saw the intruder run from the

house. Clay staggered outside afterwards, and collapsed in the street. He died after a short time from a gunshot wound to the chest.

Later that night, a man named Gary Lewis called the police and informed them that Stringer had confessed to the killing. At trial, Lewis testified that Stringer had been staying with him at his girlfriend's apartment, which was two blocks from the murder scene. Lewis stated that on the evening of the murder, Stringer drank a bottle of wine, borrowed some of his clothing, left the apartment, and returned thirty minutes later with a sawed-off shotgun and makeup on his face. After Stringer washed his face, he and Lewis left the apartment to get some "dope." During their walk, Stringer saw police at the murder scene and told Lewis that he had "iced" a man. Lewis said he called the police after they returned to the apartment and Stringer fell asleep. Approximately thirty minutes later, the police arrived at the apartment. They found a sawed-off shotgun and clothing matching that worn by the intruder.

At trial, Ballard and Colburn positively identified Stringer as the assailant, and Lewis testified about calling the police after hearing Stringer's confession. Stringer's defense counsel tried to discredit the testimony of Ballard and Colburn by pointing out discrepancies in their descriptions of the assailant. He also argued that Lewis was the killer. However, both Ballard and Colburn refuted this theory by testifying that Lewis did not resemble the intruder. The jury eventually returned a guilty verdict. Stringer was then sentenced to life in prison. The Iowa Court of Appeals affirmed his conviction on direct appeal. Stringer then filed two motions for post-conviction relief. The state trial court denied both motions, and these denials were affirmed on appeal. During the course of these state proceedings, Stringer petitioned for federal habeas corpus relief, which the district court granted in part, and denied in part. The State appealed, and Stringer was granted leave to cross-appeal.

In support of his petition for writ of habeas corpus, Stringer raised the following arguments: (1) the prosecutor engaged in prosecutorial misconduct by

asking questions which indicated Stringer had a criminal history and had been identified in other shootings; (2) the trial court erred when it denied his motion to suppress the eyewitness testimony of Ballard and Colburn; (3) he was denied the effective assistance of counsel because the jury was improperly instructed with respect to eyewitness testimony; and (4) he was able to demonstrate his actual innocence.

After receiving the State's response to Stringer's Petition, the district court granted habeas relief on the prosecutorial misconduct claim, holding that the prosecutor made improper remarks about Stringer's criminal history which fatally infected the trial, rendering it fundamentally unfair and thereby denying Stringer due process. See Stringer v. Hedgepeth, No. 4:90-CV-50054, slip op. at 53 (S.D. Iowa Nov. 20, 2000). The district court also held there was a reasonable possibility that the verdict would have been different absent the improper remarks. See id.

As to Stringer's motion to suppress, the court found that Ballard's and Colburn's identification of Stringer at his initial appearance may have resulted from a confrontation that was impermissibly suggestive. See id. at 12. However, the court found that regardless of whether the confrontation was suggestive, the identifications of Colburn and Ballard were otherwise reliable and therefore the Constitution did not require the suppression of their testimony. Id. The court also concluded that Stringer's challenge to the trial court's jury instruction involving eyewitness testimony was not sufficient to merit habeas relief. See id. at 21. Finally, the court concluded that Stringer failed to present evidence of actual innocence sufficient to demonstrate he would not have been convicted had the evidence been introduced at trial. See id. at 57. The State appealed the court's grant of habeas relief on the prosecutorial misconduct issue, while Stringer cross-appealed the court's refusal to grant relief on the remaining issues.

-4-

## II.    DISCUSSION

This appeal encompasses four issues.  They include Stringer's claim that the district court erred by denying his request for habeas relief based upon the trial court's denial of his motion to suppress the eyewitness testimony of Ballard and Colburn, his claim that he was denied the effective assistance of counsel and his right to due process when the jury was improperly instructed, and his claim that he is actually innocent.  We find no error in the district court's determination that these claims do not merit habeas relief.  Therefore, we will confine our discussion to a review Stringer's prosecutorial misconduct claim.

Because Stringer filed his habeas petition prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we apply pre-AEDPA standards in reviewing the case.  See Lindh v. Murphy, 521 U.S. 320, 327 (1997).  "Under these standards, we review the District Court's conclusions of law de novo, and give the state court's factual findings a 'presumption of correctness.'"  Jones v. Delo, 258 F.3d 893, 901 (8th Cir. 2001) (citations omitted).

"As a general rule, 'prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render [a] petitioner's conviction a denial of due process.'"  Louisell v. Dir. of Iowa Dept. of Corr., 178 F.3d 1019, 1023 (8th Cir. 1999) (citations omitted).  To amount to a due process violation, improper remarks by a prosecutor must be "so egregious that they fatally infect[] the proceedings and render[] [a defendant's] entire trial fundamentally unfair."  Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985).  A petitioner "must show that there is a reasonable probability that the error complained of affected the outcome of the trial – i.e., that absent the alleged impropriety the verdict probably would have been different."  Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995) (citations omitted).

Stringer argues that he was denied his right to due process when the trial court refused to grant his motions for a mistrial on grounds of prosecutorial misconduct. Stringer's allegations emanate from several comments made by the prosecutor during the course of the trial. The first occurred during the examination of Ballard. During Ballard's cross-examination, Stringer's counsel asked whether prosecutors informed her, before a pre-trial deposition, that Stringer was a suspect in other shootings. This exchange took place as follows:

Q:     Were you also told that Mr. Stringer was a suspect in some other shootings?

A:     [Colburn] had asked that and they said that that was a possibility.

Q:     They being whom?

A:     The prosecutor.

Q:     Mr. Ramey and Mr. Thomas?

A:     Right. And they said that that was a possibility that they were looking into, that it was a possibility that he was wanted on other crimes.

Q:     They told you that?

A:     Yes. Well, because at that time we had figured out that the night before the shooting there had been another shooting and [Colburn] was the doctor on duty at the emergency room the night before, and that particular shooting victim had been brought into the emergency room and [Colburn] fixed him up.

Q:     But the prosecutors told you that Mr. Stringer was a possible suspect in other shootings.

A:     Yes.

Q: I have nothing further, Lyn. Thank you.

Trial Transcript at 43-45.

Soon after, during redirect examination, the prosecutor asked Ballard:

Q: As a matter of fact, Lyn, I told you he had been identified in those other shootings; hadn't he [sic].

Id. at 45.

Stringer's counsel immediately moved for a mistrial. The trial court denied the motion, but admonished the jury that the question was "stricken from [the] record" and that they "should attach no significance whatsoever to that question." Id. at 58-59.

The second alleged incident of prosecutorial misconduct occurred during the prosecutor's examination of Lewis, when this exchange occurred:

Q: And at this present time, are you still on parole then?

A: Yes.

Q: As part of your parole, you're not supposed to be involved with criminals; is that true?

A: That's correct.

Q: At the time Mr. Stringer was there with you, did you know whether or not that might be a violation of your parole to have Mr. Stringer around?

Id. at 117.

-7-

After this exchange, Stringer's counsel again moved for a mistrial, arguing that the question implied that Stringer had a felony criminal record. The court denied the motion, and ordered the prosecutor to refrain from further inquiry. Stringer's counsel refused the trial court's offer to admonish the jury.

We believe that both of these cited instances represent examples of improper prosecutorial statements. The prosecutor's question to Ballard amounted to testimony that Stringer had been "identified" as a suspect in other shootings. The prosecutor's evident objective was to convey to the jury that Stringer had past involvement in criminal activities similar to that for which he had been indicted. Similarly, the prosecutor's question to Lewis placed the jury on notice that Stringer had a criminal history and was likely to damage the jury's perception of his character. Both questions were improper, as the prosecution may not introduce evidence of prior criminal conduct to prove the accused's propensity to commit a particular crime. See Fed.R.Evid. 404(b); United States v. Jones, 255 F.3d 916, 919 (8th Cir. 2001).

In this case, however, Stringer's claim of prosecutorial misconduct fails because he did not demonstrate he was prejudiced by counsel's damaging statements. Specifically, Stringer has not satisfied his burden of establishing that the outcome of his trial "probably would have been different" but for the prosecutor's objectionable remarks. Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995). The evidence introduced at trial to support Stringer's guilt was quite strong. Both Colburn and Ballard had different opportunities to view the intruder at the time of the break-in. Colburn was able to observe the intruder entering the home for several seconds before he fled up the stairs. Ballard was grabbed by the intruder and held in close proximity to his head and face. Although the intruder's face was partially obscured by make-up and a nylon, Ballard had a considerable opportunity to view the details of the intruder's appearance. Both witnesses later testified that they were confident that Stringer was the man they observed on the evening of the crime.

Further, the testimony of Lewis provided supportive evidence of Stringer's guilt, despite Stringer's suggestion that Lewis fabricated the story to conceal his involvement in the crime. Although the murder weapon was found in Lewis's apartment, both Colburn and Ballard testified that Lewis did not resemble the man who broke into their home. The jury considered Lewis's testimony, and Colburn's and Ballard's identification of Stringer, and concluded that Stringer was guilty. In our view, their guilty verdict cannot be attributed to the prosecutor's improper remarks. The district court erred in concluding otherwise.

III.   CONCLUSION

For the reasons discussed above, the judgment of the district court as to Stringer's claims of prosecutorial misconduct is reversed. As to Stringer's other assignments of error, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.