# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1258

_____

Richard C. Herrin,              *
                              *

         Appellant,          *
                              *   Appeal from the United States

    v.                   *   District Court for the
                              *   Western District of Missouri.

United States of America,    *
                              *

         Appellee.           *

_____

Submitted:  September 9, 2003

Filed:  November 12, 2003

_____

Before WOLLMAN, BOWMAN, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Richard C. Herrin appeals the district court's[1] denial of his motion for writ of habeas corpus under 28 U.S.C. § 2255.[2] He argues that comments by the government during closing argument violated his fifth amendment right to remain silent and that

_____

[1]The Honorable Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

[2]We grant Herrin's pro se motion that his August 21, 2003, correspondence with his appellate counsel be viewed and considered as part of the record on appeal.

his trial counsel's failure to object to those comments constituted ineffective assistance. We affirm.

## I.

Herrin was convicted of armed bank robbery and the use of a firearm during and in relation to a crime of violence. We affirmed his conviction and sentence on direct appeal in an unpublished opinion. United States v. Herrin, 242 F.3d 377 (8th Cir. 2000) (Table). He then filed a motion to set aside his conviction under 28 U.S.C. § 2255, claiming violations of his constitutional rights under the fifth and sixth amendments. The district court found no prosecutorial misconduct or ineffective assistance of counsel and found Herrin's insufficient-indictment claim to be without merit. D. Ct. Order of Mar. 19, 2002. The district court issued a certificate of appealability on two issues: (1) whether the prosecutor's comments during closing argument violated Herrin's fifth amendment rights, and (2) whether Herrin's trial counsel provided ineffective assistance by not objecting to those comments. D. Ct. Order of Nov. 4, 2002 at 4.

At trial, the parties presented the two factual scenarios: either Herrin or his brother, Terry Herrin (Terry), committed the felony. Witnesses to the crime had difficulty identifying the man who robbed the bank because he wore a stocking mask over his head, with duct tape covering his mouth. Terry, the government's principal witness, testified that his brother told him the details of the robbery after the fact. The government's trial strategy was to prove both that Terry could not have committed the robbery and that Herrin did commit the robbery. Herrin chose not to testify.

During his closing argument, the prosecutor focused on Terry's testimony. He argued that Terry's actions were inconsistent with guilt and that he was a credible witness, making the following comments during the course of the argument:

Now, I want you to consider the actions and the testimony of Terry Herrin, and ask yourself if those are the actions of a guilty man.

. . .

Is that what a guilty man does? No. A guilty man doesn't say a thing, he just says I am not going to tell you anything. But instead Terry Herrin cooperates fully. . . . You are going to keep your mouth shut, that's what a guilty person does, but Terry Herrin didn't do that.

. . .

There is no evidence that anybody but the defendant has a police scanner. There is no evidence that anybody but the defendant knows how to use that police scanner. There is no evidence that anybody but the defendant had the gun. There is no evidence that anybody but the defendant knew how to use the gun.

. . .

In trials you have to deal with the evidence, that is the only fair way to do this. . . . I am stuck with what came to you from the witness stand, and it ought to be the other way around too.

Herrin's trial counsel did not object to any of the prosecutor's comments during closing argument and did not raise the issue on direct appeal.

## II.

Herrin's prosecutorial misconduct claim and his ineffective-assistance claim present mixed questions of fact and law. Graham v. Dormire, 212 F.3d 437, 440 (8th Cir. 2000). We review the district court's denial of habeas relief by the usual standards of review, reviewing mixed questions of law and fact de novo. Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).

## A.

Comments by a prosecutor on an accused's failure to take the stand violate the accused's fifth amendment right to remain silent. Griffin v. State of California, 380

U.S. 609, 615 (1965). Either direct or indirect references to defendant's choice not to testify may establish a constitutional violation. Indirect comments rise to the level of a constitutional violation if the statements either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally and necessarily understand the comments as highlighting the defendant's failure to testify. Robinson v. Crist, 278 F.3d 862, 866 (8th Cir. 2002); United States v. Smith, 266 F.3d 902, 906 (8th Cir. 2001) (citations omitted). Prosecutorial comments must be reviewed in context, Graham, 212 F.3d at 439-40, and we will reverse only if the defendant shows both that the comments were improper and that they resulted in prejudice. Stringer v. Hedgepeth, 280 F.3d 826, 829-30 (8th Cir. 2002).

Because the prosecutor did not directly comment on Herrin's failure to testify, the question is whether the indirect comments ran afoul of Herrin's fifth amendment rights. We conclude that they did not, for when read in context the comments do not reflect an intent to call attention to Herrin's failure to testify but rather constitute an argument that Terry could not be guilty, given his cooperation with the police. Likewise, the challenged comments, when taken as a whole, would not naturally and necessarily have been understood by the jury as a reference to Herrin's failure to testify. Herrin argues that the jury would have understood the first comment about what "a guilty man does" as stating a general principle that applied negatively to Herrin's silence as well as positively to Terry's cooperation with the police. Taken alone, the statement "A guilty man doesn't say a thing, he just says I am not going to tell you anything" might well constitute an impermissible comment. In the context of this closing argument, however, the jury would necessarily recognize the narrow focus on Terry, for, as set forth above, the prosecutor opened that section of his argument with "Now, I want you to consider the actions and the testimony of Terry Herrin . . . ."

Finally, Herrin contends that the jury understood the remaining comments to imply that his failure to testify constituted an admission of his guilt. As we view the argument, however, those comments were a call to the jury to rely only on the evidence presented in determining whether it was sufficient to establish Herrin's guilt and not a reference to his failure to testify.

**B.**

In light of our holding that the challenged comments did not violate Herrin's fifth amendment rights, we need not consider his contention that his trial counsel rendered ineffective assistance by failing to object to them at trial and in not raising them as an issue on appeal.

The order denying the motion for a writ of habeas corpus is affirmed.

RILEY, Circuit Judge, concurring.

I concur in the judgment, but write separately because I believe the prosecutor's argument commented indirectly on Herrin's decision not to testify and therefore violated Herrin's Fifth Amendment privilege against compulsory self-incrimination. I further object to the misleading nature of two of the challenged remarks, which mischaracterized the actions (and inaction) of Terry Herrin, the defendant's brother and the prosecution's chief witness.

The majority correctly states that a reviewing court must evaluate the challenged prosecutorial remarks in the context of the entire argument and the evidence adduced at trial. United States v. Emmert, 9 F.3d 699, 702 (8th Cir. 1993); United States v. Durant, 730 F.2d 1180, 1184 (8th Cir. 1984). However, in concluding the challenged remarks do not reflect an intention to call attention to

Herrin's failure to testify, the majority evaluated the challenged remarks in the context of a small segment of the prosecutor's closing argument.

The prosecutor framed his closing argument in the form of a disjunctive syllogism,[3] beginning with a statement of alternatives: "[I]t boils down to whether the defendant committed the robbery or whether Terry Herrin committed the robbery." The prosecutor next eliminated Terry Herrin as an alternative, arguing "[I]f Terry Herrin did not commit this robbery, there is only one logical possibility under common sense, the evidence, and the law; and that's that the defendant committed the robbery."

The prosecutor then proceeded to contrast the personal characteristics of Terry Herrin with those of Richard Herrin. The prosecutor argued the robber wore a glove on his left hand, and had duct tape across the mouth hole of his mask, saying:

> Terry Herrin does not have a tattoo on his left hand. Terry Herrin doesn't have any tattoos at all. The defendant Richard Herrin has a tattoo on his left hand.
>
> . . .
>
> Terry Herrin showed you his teeth. There is nothing unusual about his teeth . . . .The defendant's dental situation is very obvious[] and unique, he has very few teeth left in his head.

After directly contrasting the two brothers by name, the prosecutor then proceeded to contrast indirectly the actions and testimony of Terry Herrin with the actions and lack of testimony by Richard Herrin, substituting "a guilty man" in place of Richard Herrin's name. The prosecutor declared,

---

[3]A disjunctive syllogism has as its first premise a statement of alternatives: *Either p or q;* it continues: *not q, therefore p.*

Now, I want you to consider the actions and the **testimony** of Terry Herrin, and ask yourself if these are the actions of a guilty man.

. . .

A guilty man doesn't say a thing, he just says I am not going to tell you anything. **But** instead Terry Herrin cooperates fully.

. . .

You are going to keep your mouth shut, that's what a guilty person does, **but** Terry Herrin didn't do that.

(Emphasis added.)

No leap of logic was required for the jury to deduce the prosecutor's intended argument: A guilty person keeps his mouth shut; Richard Herrin kept his mouth shut; Richard Herrin is a guilty man. The remarks manifested a clear intention by the prosecutor to highlight, by means of contrast to his brother, Richard Herrin's failure to testify at trial. A jury hearing the entire argument would understand the last remark ("You are going to keep your mouth shut, that's what a guilty person does, but Terry Herrin didn't do that . . .") as an indirect but powerful comment on Richard Herrin's failure to testify at trial. <u>See</u> <u>Griffin v. California</u>, 380 U.S. 609, 615 (1965).

Furthermore, two of the prosecutor's remarks are arguably misleading to the jury. Contrary to the prosecutor's argument ("But Terry Herrin didn't do that"), Terry Herrin, in fact, remained silent for nearly five weeks. Terry Herrin "didn't say a thing" and "kept his mouth shut" from March 2, the date on which he learned of the robbery, until April 7, when the FBI first contacted him. Not only did Terry Herrin keep his mouth shut, he intentionally destroyed fingerprint evidence, and concealed evidence of the robbery–the gun, a shirt, handcuffs, a shoulder holster, and ammunition. Terry Herrin even accepted $1000 in hush money for his silence. Also contrary to the prosecutor's characterization, Terry Herrin did not "cooperate[] fully" with the authorities, at least not initially. When FBI agents first contacted Terry

Herrin on April 7, 1999, he withheld information and lied in his written statement, representing he did not learn about the robbery until a week or two after the robbery.

The prosecutor's major premise is even misleading. All guilty suspects do not remain silent. Often, they lie, giving false alibis and blaming others. On occasion, they even confess. On the other hand, innocent suspects may choose to exercise their constitutional right to remain silent, which may be a wise decision.

Despite the impropriety of some of the challenged remarks, the cumulative effect of any constitutional error committed in this case was minimal. See United States v. Triplett, 195 F.3d 990, 997 (8th Cir. 1999). I conclude with fair assurance that the improper remarks were harmless beyond a reasonable doubt, see Chapman v. California, 386 U.S. 18, 22-24 (1967), and did not so infect the trial with unfairness that the resulting conviction was a denial of due process, see Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). In light of the government's substantial evidence, the prosecutor's improper remarks did not deny Herrin a fair trial. See United States v. Johnson, 968 F.2d 768, 772 (8th Cir. 1992) (declaring "[i]f the evidence of guilt is overwhelming, an improper argument is less likely to affect the jury verdict.") (quoting United States v. Splain, 545 F.2d 1131, 1135 (8th Cir. 1976)). Thus, I concur.

_____