# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1440

_____

United States of America

*Plaintiff - Appellee*

v.

Andre Michael LaFontaine, III

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 13, 2017
Filed: February 8, 2017

_____

Before LOKEN, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Andre Michael LaFontaine was convicted of making a threatening communication in violation of 18 U.S.C. § 875(c) and sentenced to 18 months' imprisonment. He appeals his conviction and sentence, arguing that the government

committed prosecutorial error and the district court[1] erred in admitting evidence of a prior perceived threatening statement. LaFontaine also challenges the district court's imposition of several special conditions of supervised release. For the reasons discussed below, we affirm.

## I.    BACKGROUND

In November 2010, LaFontaine was charged in state court with, and convicted of, operating while intoxicated, second offense, and eluding, in Iowa Falls, Iowa. The Iowa Court of Appeals affirmed the convictions. Believing that a conspiracy to obstruct justice existed between the state court, police, and attorneys, LaFontaine complained to a local law firm, the President of the United States, and the International Association of Anti-Corruption Authorities. LaFontaine then filed two civil lawsuits in federal court: one against the Iowa Falls Police Department and another against the police officers who arrested him. The district court dismissed both lawsuits, and this court affirmed the dismissals. LaFontaine was unsuccessful in appealing his federal lawsuits to the United States Supreme Court.

On October 1, 2013, LaFontaine contacted a federal court employee about his lawsuits and stated, "Sometime we are actually going to meet up, and I'm looking forward to it. I can do what I want to do. You're a baby." The United States Marshals Service investigated the threatening remarks and interviewed LaFontaine. During an interview in January 2014, LaFontaine admitted that he was frustrated when he made the call but denied making a threat. He said it would be "foolish to do so," and that he "[knew] better than that." LaFontaine then asked the FBI to investigate the Iowa Falls Police Department for civil rights violations. FBI Agent Tomlinson told LaFontaine that there was no basis for his complaint.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

On July 20, 2015, LaFontaine called the Department of Justice (DOJ) in Washington, D.C., to complain about Agent Tomlinson. He left the following voice mail, which led to the conviction appealed in this case:

> Yeah my name is Andre Michael LaFontaine, the third, I'm from Iowa Falls, Iowa, co-state litigant. What I've done is sent you fuckin' retards evidence of corruption multitude of times, I'm getting really fuckin' sick and tired of you people disregarding all the evidence, the profound evidence, that I've sent you, and put in front of Craig, special agent of the FBI, Craig Tomlinson's face — and have him call me while I record him and tell me that the evidence is no fucking good. So what I'm telling you for the last fuckin' time is that if this fuckin' writ isn't satisfied or investigated properly, these judges in Eldora are gonna get their fuckin' throats cut, you fuckin' niggers better do your fuckin' job.

Special Agent Kieffer with the Federal Protective Service investigated the perceived threatening voice mail. During an interview on July 23, 2015, at LaFontaine's residence, LaFontaine admitted that he left the voice mail with the DOJ and intended for the message to "spark action" on his complaints about the Iowa Falls Police Department. According to Kieffer, LaFontaine also admitted during the interview that he intended for the communication to be threatening. LaFontaine was in possession of a pocket knife at the time of the interview. A search of his residence, pursuant to a search warrant, yielded a variety of documents from disputes with others, including police officers, and audio recordings of phone calls made to numerous courts and law enforcement officials. In a letter addressed to the FBI, LaFontaine stated that he intended to rescind his United States citizenship and "may have to take a life just to defend [himself]" since the government had not done anything to resolve his grievances.

On August 12, 2015, LaFontaine was indicted for transmitting a threatening communication in interstate commerce, in violation of 18 U.S.C. § 875(c). Prior to trial, LaFontaine filed a motion to exclude any evidence that he threatened the federal

court employee, in October 2013. The government sought to use the evidence to show LaFontaine's intent and lack of mistake. In light of the government's response, LaFontaine requested that if the district court were to admit the evidence, the court should also allow content of the prior statements into evidence to support his claim that the statements were not threatening. The district court held that the statements were admissible under Federal Rule of Evidence 404(b) as evidence of LaFontaine's intent or lack of mistake. At trial, a Deputy United States Marshal testified about the 2013 perceived threatening communication and the subsequent interview with LaFontaine. LaFontaine was also allowed to present evidence about the content of the prior statements.

A jury found LaFontaine guilty on October 14, 2015. He then filed a motion for a new trial alleging that the district court erred by allowing evidence of the prior threatening communication. The district court denied the motion. With an offense level of twelve and a criminal history category of II, LaFontaine's Guidelines range was twelve to eighteen months. The Presentence Investigation Report (PSR) also recommended the following special conditions of supervised release: (1) a substance abuse program; (2) a total alcohol ban, meaning that he was "prohibited from entering any establishment that holds itself out to the public to be a bar or tavern"; (3) a mental health program; (4) GPS monitoring; (5) housing in a residential reentry program; (6) a "no-contact" agreement; and (7) submission to random searches. LaFontaine objected to the GPS monitoring special condition in a sentencing memorandum. At sentencing, the district court determined that LaFontaine's Guidelines range was twelve to eighteen months. The district court then heard argument on the sentence, including the conditions of supervised release, and considered the 18 U.S.C. § 3553(a) factors. The district court sentenced LaFontaine to eighteen months' imprisonment, to be followed by a three-year term of supervised release. The court also imposed the special conditions of supervised release listed above.

LaFontaine now appeals, arguing that (1) the government repeatedly committed prosecutorial misconduct during its closing argument; (2) the district court erred in admitting the Rule 404(b) evidence; (3) the district court abused its discretion in imposing GPS monitoring during supervised release; and (4) the district court's imposition of a total alcohol ban and substance abuse treatment during supervised release was plain error.

## II.    DISCUSSION

### A.    Prosecutorial Misconduct

LaFontaine argues that the government repeatedly committed prosecutorial misconduct during closing argument by stating that LaFontaine was not presumed innocent, indirectly commenting on LaFontaine's failure to testify, expressing its opinion on LaFontaine's guilt, and personally attacking LaFontaine's counsel. We disagree. "The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Jones, 795 F.3d 791, 799 (8th Cir. 2015) (quoting United States v. Wilkens, 742 F.3d 354, 361 (8th Cir. 2014)). Because LaFontaine failed to object to the alleged misconduct, we review for plain error. United States v. Alaboudi, 786 F.3d 1136, 1141 (8th Cir. 2015). Under the plain error standard of review, the defendant must show that the error was "clear, prejudicial, and affected the trial's outcome." Id. In other words, the error must be such that it "affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (quoting United States v. Wadlington, 233 F.3d 1067, 1079 (8th Cir. 2000)).

First, LaFontaine takes issue with the government's statement that LaFontaine "absolutely does not stay presumed innocent." LaFontaine, however, takes the

government's statement out of context. After the above-quoted statement, the government reviewed previously presented evidence that rebutted the presumption of innocence and stated that "[h]e's been proven guilty beyond a reasonable doubt." It is undisputed that the presumption of innocence "remains with the defendant through every stage of the trial, most importantly, the jury's deliberations" and that the presumption is "extinguished only upon the jury's determination of guilt beyond a reasonable doubt." United States v. Crumley, 528 F.3d 1053, 1065 (8th Cir. 2008) (quoting Kellogg v. Skon, 176 F.3d 447, 451 (8th Cir. 1999)). Here, both the preliminary and final jury instructions correctly stated this rule of law. Neither party objected to the jury instructions, and the government's argument simply mirrored these instructions. There is no prosecutorial misconduct when the government does "little more than paraphrase the court's instruction." United States v. Johnson, 639 F.3d 433, 442 (8th Cir. 2011). Moreover, "[a]n advocate is permitted considerable latitude in responding to his opponent's arguments." United States v. Collins, 642 F.3d 654, 658 (8th Cir. 2011) (quoting United States v. Beaman, 361 F.3d 1061, 1065 (8th Cir. 2004)). During closing argument, LaFontaine argued that he "remains presumed innocent, and the government has failed to overcome that presumption." The government then responded to that argument by stating that LaFontaine did not *stay* presumed innocent because he had, in fact, been proven guilty beyond a reasonable doubt. This argument does not exceed the wide latitude afforded attorneys when responding to opposition. See id.

Second, LaFontaine argues that the government indirectly commented on LaFontaine's failure to testify when it stated that "[t]he only evidence in this courtroom is what you heard, on that point, from this agent." An indirect comment on the defendant's failure to testify "rise[s] to the level of a constitutional violation if the statement[] either (1) manifest[s] the prosecutor's intention to call attention to the defendant's failure to testify, or (2) [is] such that the jury would naturally and necessarily understand the comments as highlighting the defendant's failure to testify." Herrin v. United States, 349 F.3d 544, 546 (8th Cir. 2003). To fit within the

second prong of the test, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury *necessarily* would have done so." United States v. Gardner, 396 F.3d 987, 992 (8th Cir. 2005) (quoting United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996)).

Here, the government had to prove that LaFontaine intended for the communication to be threatening or at least knew that the communication would be viewed as threatening. Elonis v. United States, 135 S. Ct. 2001, 2012 (2015). When Kieffer interviewed LaFontaine at his residence, LaFontaine allegedly admitted that the voice mail was intended to be a threat that would "spark action." However, this interview was not recorded or transcribed, and there was no signed statement. When cross-examining Kieffer at trial, LaFontaine focused on this, asking the jury to question Kieffer's credibility. In response to the cross-examination and knowing that LaFontaine would advocate for a position that conflicted with Kieffer's testimony, the government pointed out that Kieffer's testimony was the only direct evidence of the interview presented at trial, which was a true statement. The government then presented other evidence to establish the element of intent. And as expected, in closing argument, LaFontaine claimed that the voice mail was not a threat and that he did not know it would be viewed as such. Examining "the entire context of the remarks, including 'the argument itself, and the larger context of the evidence introduced at trial,'" United States v. Martin, 777 F.3d 984, 996 (8th Cir.) (quoting United States v. Durant, 730 F.2d 1180, 1184 (8th Cir. 1984)), cert. denied, 135 S. Ct. 2827 (2015), the jury would not have necessarily understood the government's statement as an attempt to call attention to LaFontaine's failure to testify. See Herrin, 349 F.3d at 546. Rather, the record supports the government's position that the statement was made to strengthen Kieffer's credibility and highlight evidence of LaFontaine's intent.

Third, LaFontaine argues that the government committed prosecutorial misconduct by twice expressing an opinion on his guilt. At trial, the government

stated, "Is that a friendly call? . . . No, it's not. It's a threat. Everybody understands that." LaFontaine argues that the government's statement that "[e]verybody understands that" was an improper "personal expression of [LaFontaine's] culpability." United States v. Splain, 545 F.2d 1131, 1135 (8th Cir. 1976). This is a stretch. The government was merely submitting its theory. It did not opine on LaFontaine's guilt or innocence. The comment was in reference to whether the communication contained a threat to injure, the element of the offense at issue in this case. See 18 U.S.C. § 875(c). As discussed above, LaFontaine argued that he did not intend to threaten anyone and that he did not know that his voice mail would be viewed as a threat. The government's statement was a clear attempt to show that LaFontaine must have known that his statement would be interpreted as a threat because such words are widely understood as threatening. It was an appeal to the jury's common sense, which is not improper. See Six v. Delo, 94 F.3d 469, 477 (8th Cir. 1996). Similarly, contrary to LaFontaine's argument, the government's use of the phrase "I submit" was not improper vouching. "Although the use of [this] phrase[] has been often criticized (and discouraged) . . . , it is not always improper." United States v. Bentley, 561 F.3d 803, 811 (8th Cir. 2009). "It is only improper when it suggests that the government has special knowledge of evidence not presented to the jury, carries an implied guarantee of truthfulness, or expresses a personal opinion about credibility." Id. at 812. Here, the record shows that the government used the phrase "to refer the jury to the government's evidence and to summarize the government's case against [LaFontaine]," which is not improper. Id. (quoting United States v. Lahey, 55 F.3d 1289, 1299 (7th Cir. 1995)).

Finally, LaFontaine argues that the government made personal attacks on defense counsel during rebuttal, specifically that the prosecutor called defense counsel ridiculous. However, the prosecutor never called defense counsel ridiculous. LaFontaine argued that if he had intended for the voice mail to be a threat, he would have done more to effectuate the alleged threat. The government called LaFontaine's *argument* "complete speculation" and stated that the *argument* was "ridiculous." The

government then explained how the evidence, including the voice mail itself, disproved LaFontaine's theory. Personal attacks on opposing counsel are improper. United States v. Holmes, 413 F.3d 770, 775 (8th Cir. 2005). However, as demonstrated here, "[t]he prosecutor may . . . use '"colorful pejoratives" and argue a personal interpretation of the evidence' during closing." United States v. Sigillito, 759 F.3d 913, 936 (8th Cir. 2014) (quoting United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001)). The government did not exceed the "considerable latitude" allowed when responding to LaFontaine's arguments. Collins, 642 F.3d at 658.

Because none of the actions LaFontaine complains of were improper, let alone clear error, LaFontaine's prosecutorial misconduct claims fail the first prong of the test. See Jones, 795 F.3d at 799. Thus, we need not discuss whether the remarks prejudicially affected LaFontaine's rights. The government committed no reversible prosecutorial misconduct during closing argument.

## B. Rule 404(b) Evidence

The district court admitted evidence of LaFontaine's 2013 conversation with the federal court employee, in which LaFontaine's comments were perceived as threatening. The court allowed the evidence under Federal Rule of Evidence 404(b) to show LaFontaine's intent and lack of mistake. LaFontaine argues that this was in error because the evidence was irrelevant and highly prejudicial. We disagree.

"A district court's evidentiary rulings are reviewed for an abuse of discretion and are reversed 'only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict.'" United States v. Contreras, 816 F.3d 502, 511 (8th Cir. 2016) (quoting United States v. Elbert, 561 F.3d 771, 775 (8th Cir. 2009)). Under Rule 404(b),

[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

This rule is "one of inclusion, such that evidence offered for permissible purposes is presumed admissible absent a contrary determination." Contreras, 816 F.3d at 511 (quoting United States v. Williams, 796 F.3d 951, 958 (8th Cir. 2015), cert. denied, 136 S. Ct. 1450 (2016)). A four-part test is used to determine whether a district court abused its discretion by allowing Rule 404(b) evidence. Id. The evidence is properly admitted if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." Id. (quoting Williams, 796 F.3d at 959).

First, the evidence of the 2013 incident was relevant to the key issue in the case–whether LaFontaine intended to send a threatening communication or knew that the voice mail would be viewed as threatening. Second, like the instant offense, the prior incident involved a potentially threatening statement to a government official because of LaFontaine's frustration with his treatment by a government official. And, the prior incident occurred in October 2013, less than two years before the current incident, which is not overly remote. Third, the Deputy United States Marshal who investigated the incident and interviewed LaFontaine testified at trial and provided sufficient evidence of the incident. Lastly, LaFontaine was not prejudiced by the introduction of this evidence. As requested, LaFontaine was allowed to present evidence of the content of the communication, and the court gave a limiting instruction. Moreover, the government did not address the 2013 incident in closing argument. Thus, the district court did not abuse its discretion by admitting this evidence.

-10-

## C.     GPS Monitoring

LaFontaine also appeals the district court's imposition of GPS monitoring as a condition of supervised release.  "We review a district court's imposition of special conditions of supervised release for [an] abuse of discretion."  United States v. Hobbs, 710 F.3d 850, 852 (8th Cir. 2013).  A district court has broad discretion to impose special conditions of supervised release so long as the condition is "reasonably related to certain sentencing factors set forth in 18 U.S.C. § 3553(a)." United States v. Forde, 664 F.3d 1219, 1222 (8th Cir. 2012).  However, "[a] special condition may not deprive an individual of more 'liberty than is reasonably necessary' to accomplish these purposes."  Id. (quoting 18 U.S.C. § 3583(d)(2)).  LaFontaine argues that this condition violated the tailoring requirement.  We disagree.

LaFontaine received notice prior to sentencing that the court was considering placing him on electronic monitoring, which includes GPS monitoring.  LaFontaine then filed a sentencing memorandum specifically objecting to GPS monitoring.  At sentencing the court heard argument on the conditions of supervised release.  The court carefully considered all of the § 3553(a) factors, including LaFontaine's history and character, as well as trial testimony and counsels' written and oral arguments. LaFontaine had a prior conflict with a federal court employee, had multiple confrontations with other people, and threatened to take life to defend himself against injustice.   Taking all of this into account, the district court determined that LaFontaine's criminal behavior had escalated and that he was a safety risk. Moreover, although LaFontaine did not dispute that the judges of Eldora County were victims and agreed to a no-contact order, given his prior criminal history, there was no guarantee he would comply with the order.  GPS monitoring would provide law enforcement with advance notice if LaFontaine sought to contact anyone he had previously threatened.  Based on these facts, GPS monitoring was clearly reasonable and as narrowly tailored as possible.  The district court did not abuse its discretion.

**D.** **Alcohol Ban and Substance Abuse Treatment**

In addition to GPS monitoring, the district court also imposed a total alcohol ban, which "prohibited [LaFontaine] from entering any establishment that holds itself out to the public to be a bar or tavern," and ordered substance abuse treatment. LaFontaine argues that imposing these special conditions of supervised release without explanation was in error. We disagree.

As with GPS monitoring, the court advised LaFontaine prior to sentencing that it intended to require special conditions for supervised release, including an alcohol ban and substance abuse treatment. Unlike GPS monitoring, however, LaFontaine failed to object to these conditions. In fact, at sentencing LaFontaine stated that he was "not objecting to–*the substance abuse treatment*, the mental health evaluation, *the prohibition of alcohol consumption*, the no-contact orders, and the search provisions." Thus, although we would normally review for plain error because LaFontaine failed to object to the conditions, United States v. Simons, 614 F.3d 475, 478 (8th Cir. 2010), because LaFontaine "knowingly and voluntarily waive[d these] right[s], any error is unreviewable on appeal," United States v. Campbell, 764 F.3d 874, 878 (8th Cir. 2014). The district court advised LaFontaine of its plan of action, and LaFontaine agreed to it. He "invited [any] error," id. (quoting Matthew v. Unum Life Ins. Co. of Am., 639 F.3d 857, 868 (8th Cir. 2011)), and he "cannot [now] complain that the district court gave him exactly what his lawyer asked," United States v. Thompson, 289 F.3d 524, 526 (8th Cir. 2002). LaFontaine waived his right to appeal these conditions of supervised release.

## III.  CONCLUSION

The judgment of the district court is affirmed.

_____